UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW AUSTIN, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 10-cv-7355 |
| v. | ) ) Judge John W. Darrah |
| OFFICER VARGA #666 et al., | ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Andrew Austin filed a four-count Complaint against the Village of Park Forest, Illinois; the City of Chicago Heights, Illinois; and a number of named and unknown officers. Count I is a purported class-of-one equal-protection claim. Count II is a claim for malicious prosecution under state law. Counts III and IV are supplemental claims for statutory indemnification and recovery under a theory of *respondeat superior*, respectively.

The City of Park Forest moved to dismiss Count I (the only federal cause of action) against them. Another motion to dismiss was then filed by a number of named Park Forest Police Officer Defendants, followed by a motion to dismiss all claims against the City of Chicago Heights and various Chicago Heights Police Officer Defendants. Other named Defendant Officers were granted leave to join in the existing motions to dismiss. As discussed below, the motions are granted; this action is dismissed in its entirety.

## BACKGROUND

The following facts are taken from Austin's Complaint and are accepted as true for purposes of resolving these motions to dismiss.

A man named James Bray was shot and killed on January 24, 2007, in Park Forest, Illinois. (Compl. ¶ 7.) While on duty on or about January 25, 2007, Officer Rogers and some of the other Defendant Park Forest Officers came into contact with Plaintiff Austin and arrested him (or "failed to prevent" his arrest). (Compl. ¶¶ 8-10.) Defendant Officers did so despite the fact that they "failed to observe and/or learn that Andrew Austin had committed criminal activity of any sort" and without "probable cause to believe that criminal activity took place relative to Andrew Austin." (Compl. ¶ 10.)

On January 25, 2007, Officers Varga and Wasek interviewed a witness, Deon Smith, and coerced him to give false statements, implicating Austin as Bray's shooter. (Compl. ¶¶ 11-12.) On January 26, 2007, Officers Varga and Studer interviewed another witness, Warren Lockette, and coerced him to give false statements implicating Austin, as well. (Compl. ¶¶ 14-15.) Officer Varga interviewed Lockette again the following day (this time, with Officer Beilke) and again coerced Lockette into falsely implicating Austin. (Compl. ¶¶ 14, 16.) On January 27, 2007, Officers Peddycord and Green interviewed a third witness, William Nalls, who was also coerced into giving false statements implicating Austin as the shooter. (Compl. ¶¶ 17-18.)

Officer Howard and an Assistant State's Attorney took Smith's false written statement on January 27, 2007. (Compl. ¶ 13.) Officer Alcott and an Assistant State's Attorney took Nalls's false written statement on January 27, 2007. (Compl. ¶ 19.) As a result of these statements, Austin was placed in police custody on January 25, 2007, and criminal charges were filed against him.[1] (Compl. ¶ 20.)

In July 2007, Officer Varga and Officer Vaci had knowledge of exculpatory evidence with regards to the gun that was used to murder Bray. (Compl. ¶ 21.) Officer Varga did not reveal this evidence until approximately one week before November 19, 2009, when he produced it to the State's Attorney who was handling Austin's criminal prosecution. (Compl. ¶¶ 22-23.) The case against Austin was then dismissed, and Austin was released from custody. (Compl. ¶¶ 23-24.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."

---

[1] Austin alleges that he was arrested as a result of the witness statements, even though two of the three witnesses gave their statements *after* his arrest and even though none of the statements were taken by the Assistant State's Attorney until after his arrest.

3

*Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

The Seventh Circuit has summarized the requirements of a well-pleaded complaint as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Id.* at 581.

## ANALYSIS

Austin brings his claims against two Defendant Municipalities (the Village of Park Forest and the City of Chicago Heights), thirty-three individual Defendant Officers,

and an unidentified number of unknown officers. Austin makes various allegations regarding the "Chicago Heights Defendant Officers" and the "Park Forest Defendant Officers"; but, with only a few exceptions, he does not allege which officers are affiliated with which Defendant Municipality, much less allege any basis for holding either Defendant Municipality liable for those Officers' acts.

In order to state a claim against a municipality under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), a plaintiff must allege that a constitutional violation occurred because of "(1) the enforcement of an express policy of the City, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009) (citations omitted). Austin asserts that he is not required to state a claim under *Monell* and that, at any rate, the Defendant Municipalities are aware of claims against them by virtue of Austin's claims against Defendant Officers in their official capacities. These arguments are unpersuasive. Austin does not allege *any* misconduct on the part of the Defendant Municipalities, themselves. It is well settled that individual liability for civil rights violations requires a defendant's personal involvement in the alleged violations. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). It is also settled that "municipalities cannot be held liable for § 1983 claims under a theory of respondeat superior." *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999) (citing *Monell*, 436 U.S. at 691); *accord Davis v. Zirkelbach*, 149 F.3d 614, 619 (7th Cir. 1998). Austin would have the Court hold that his act of filing

of a suit against a municipality's employee automatically provides sufficient notice to the municipality of separate liability against the municipality. That is not the law.

Austin's allegations are similarly lacking as to most of the individual officers in that there are no allegations that those officers were personally involved in alleged constitutional violations. Specific conduct is ascribed to only nine individual Defendant Officers in Austin's Complaint: Officers Rogers, Varga, Wasek, Howard, Studer, Beilke, Peddycord, Green, and Alcott. Twenty-four additional Defendant Officers are named in the caption and the introductory paragraph of the Complaint, but there are no allegations against them specifically. Austin merely alleges that "some" of the Defendant Officers "including but not limited to" certain named Defendant Officers engaged in various conduct. (*See, e.g.*, Compl. ¶¶ 8, 10.) Austin does not so much as allege that any of those twenty-four Defendant Officers had any contact with him or that they were at all involved in the investigation of Bray's murder. Thus, Austin fails to allege sufficient "facts to raise a reasonable expectation that discovery will reveal evidence" supporting his allegations against those twenty-four Defendant Officers. *Brooks*, 578 F.3d at 581 (quoting *Twombly*, 550 U.S. at 556). For that reason, Count I is dismissed as to both Municipal Defendants and as to each named Defendant Officer other than Officers Rogers, Varga, Wasek, Howard, Studer, Beilke, Peddycord, Green, and Alcott.

Even with regard to the remaining Defendants, however, Austin fails to allege a cognizable claim that those Defendant Officers violated his constitutional right to equal protection of the laws. To state a "class-of-one" equal protection claim, Austin must

allege the following: (1) that Defendants treated him differently from others who are similarly situated and (2) that there is no rational basis for the different treatment or that he was treated differently because of the Defendants' "totally illegitimate animus" toward him.² *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (*McDonald*).

Equal-protection claims are claims of discrimination: "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*Olech*) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)) (internal quotation marks omitted); *see also Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010) ("The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'") (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-02 (2008); *Olech*, 528 U.S. at 564).

---

² The law of the Seventh Circuit is not clear as to whether animus is a necessary element of a class-of-one equal-protection claim. Some cases have stated that a plaintiff must show *either* that there is no rational basis for the different treatment *or* that he was treated differently because of the defendants' "totally illegitimate animus" toward him. *See, e.g., McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Others have characterized class-of-one cases as "vindictive action" cases that require "proof that the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Thus far, the Seventh Circuit has not reconciled the conflict. *See Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Here, Austin fails to sufficiently allege the first required element of a class-of-one equal-protection claim: that the Defendant Officers treated him differently than similarly situated individuals. To sufficiently state a class-of-one equal-protection claim, Austin must allege that he and his comparators are "*prima facie* identical in all relevant respects or directly comparable . . . in all material respects." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)). "Although this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed.'" *Id.* at 896-97 (citing *McDonald*, 371 F.3d at 1002).[3]

Austin fails to meet this burden. His conclusory allegations regarding similarly situated individuals are as follows:

> Plaintiff was similarly situated to other individuals who (a) were the subject matter of a criminal investigation; (b) were the subject matter of a criminal murder investigation[;] (c) were involved in interactions with police officers including, but not limited to, police investigations, seizures and/or arrests. In the other situations where the Plantiff [*sic*] was similarly situated, the Defendant Officers did not coerce false witness statements, falsify evidence and/or fail to tender exculpatory material evidence regarding those individuals.
>
> Upon information and belief, each and every Defendant Officer, working in his capacity as a police officer, has taken witness statements and tendered exculpatory material evidence with regards to at least ten (10) individuals who were investigated, seized, and/or arrested or otherwise interacted with the respective police department with which they worked prior to the aforementioned coercion of false witness statements and/or the failure to tender material evidence concerning Plaintiff. . . . [and] [o]n at least ten (10) occasions prior to January 24, 2007, . . . has not coerced

---

[3] For a more detailed analysis of the necessity of pleading the existence of similarly situated individuals for a class-of-one equal-protection claim, see this Court's opinion in a previous case filed by the same Plaintiff's counsel: *Muczynski v. Lieblick*, 769 F. Supp. 2d 1129 (N.D. Ill. 2011).

> false witness statements . . . . did not withhold exculpatory material evidence . . . . [and] did not generate false evidence with regards to individuals who were investigated, seized, and/or arrested or otherwise interacted with the respective police department.

(Compl. ¶¶ 33-37.)

These allegations are nothing more than inadequate, "abstract recitations of the elements of a cause of action or conclusory legal statements" that the *Brooks* court held to be unacceptable. *See Brooks*, 578 F.3d at 581. Austin seeks to compare himself to persons who were the subject of other, unrelated criminal investigations or who were involved in unrelated interactions with other police officers. The harm Austin alleges is that he was arrested on the basis of witness statements that were false and that some of the Defendant Officers delayed in turning over exculpatory evidence. Similarly situated individuals not subject to that harm would include every person who was not arrested based on false witness statements and every individual from whom exculpatory evidence was not withheld by these Defendants. The purported class of comparators is infinite.

In essence, Austin is claiming that he was maliciously prosecuted.[4] Unlawful as the named Defendant Officers' alleged conduct may be, it cannot legally be classified as discrimination for purposes of maintaining a class-of-one equal-protection claim. Austin may have been denied certain *protections* of the law, but his allegations do not show he was denied *equal* protection of the law. It is the presence of *unequal* treatment that implicates equal-protection rights. Without alleging sufficient "facts to raise a reasonable

---

[4] Austin alleges a separate malicious-prosecution claim under state law. The Seventh Circuit does not recognize malicious-prosecution claims as § 1983 claims. *See Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Austin's only purported basis for federal subject-matter jurisdiction is his class-of-one equal-protection claim.

9

expectation that discovery will reveal evidence" that he was treated less favorably than similarly situated individuals, *cf. Brooks*, 578 F.3d at 581, Austin fails to state a claim for discrimination.

As the Seventh Circuit has explained, the requirement to allege and prove that "similarly situated" persons were treated differently is necessary to prevent class-of-one claims from constitutionalizing all tort law:

> The reason that there is a "similarly situated" requirement in the first place is that at their heart, equal protection claims, even "class of one" claims, are basically claims of discrimination. Even if McDonald was wronged here, we do not believe that he has shown the wrong to be discriminatory in nature. Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm. Nonetheless, the purpose of entertaining a "class of one" equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case. Therefore, we believe a meaningful application of the "similarly situated" requirement is important to avoiding a distortion of the scope of protection in "class of one" equal protection claims.

*McDonald*, 371 F.3d at 1009.

The reasoning of *McDonald* is persuasive. If Austin's allegations here are held to be sufficient to state an equal-protection claim, then a vast number of intentional torts by state actors would also be the basis of such claims. Austin's theory of class-of-one equal-protection claims would allow a plaintiff to satisfy the discrimination requirement simply by alleging that other law-abiding persons were not subject to unlawful treatment. If such allegations were sufficient, the scope of class-of-one claims would be distorted to include almost any intentional tort committed by a state actor. An officer who arrests someone without probable cause or uses unreasonable force on an arrestee is certainly

treating the victim differently than persons who have not been subject to false arrest or excessive force; and, almost by definition, those illegal acts are undertaken without a rational basis in the law. Class-of-one equal-protection claims must be limited to those in which the plaintiff pleads, with requisite specificity, that similarly situated persons were not subject to the specific conduct of which the plaintiff complains. Strict enforcement of this requirement ensures that the scope of such claims can be properly controlled and the potential of constitutionalizing all tort law on the basis of equal protection avoided. Accordingly, Count I is dismissed as to all Defendants. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over Austin's remaining state-law claims. Those claims are dismissed, as well.

## CONCLUSION

For the reasons stated above, the City of Park Forest's Partial Motion to Dismiss [15], Defendant Park Forest Officers' partial Motion to Dismiss Plaintiff's Complaint [35], and Defendants City of Chicago Heights Officers' and City of Chicago Heights's Motion to Dismiss [43] are granted.

Date: August 25, 2011

JOHN W. DARRAH
United States District Judge